IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH B. FLYNN, ET AL | § | |
| | § | |
| v. | § | CIVIL ACTION 4:11-cv-03908 |
| | § | |
| AMERICAN HONDA MOTOR CO., INC.; ET AL | § § § | |

**PLAINTIFFS' MOTION FOR NEW TRIAL, AND ISSUANCE OF A NEW SCHEDULING ORDER AND FOR OTHER RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, JOSEPH B. FLYNN, Individually and as Personal Representative of the Estate of JACQUELINE RENEE FLYNN, Deceased and MARIE ESTHER (FLYNN) SOORD, Individually and file this Motion for New Trial, per FRCP 59, including a New Scheduling Order would respectfully show the Court as follows, to-wit:

**I.**

**Preliminary Statement**

This case arises from a fatal accident involving Plaintiffs' daughter, Jacquelyn Flynn. Plaintiffs filed suit against Defendants under the doctrines of negligence and strict products liability alleging that a timely deployed air bag would have prevented the death of their daughter.

The Court has granted a motion to exclude the affidavit of Plaintiffs' expert witness and granted motion for summary judgment on the grounds that Plaintiffs failed to set forth more than a scintilla of material fact on the economic feasibility of a safer alternative design.

1

Plaintiffs would respectfully show unto the Court that more than a scintilla of evidence of the feasibility and cost of a safer alternative design was timely produced in the expert's January 2014 initial Report, and that was also before the Court in response to the motion for summary judgment. This report disclosed the fact that the airbag system utilized by Honda prior to the 1994 year model was in fact a safer alternative design in that it would have opened fast enough to have prevented Ms. Flynn's death.

## II

### Situation Leading Up To Court's Granting of the Summary Judgment

A. <u>Mr. Mahon's January Report Did Address the Technological and Economic Feasability of A Safer Alternative Design.</u>

The most compelling fact in this case is the timely served Expert Disclosure Report of Plaintiffs' expert, Geoffrey Mahon, on January 16, 2014 (over 7 months prior to Plaintiff's expert deadline). This Report is attached hereto, as Exhibit "A" (Doc. No. 116-1) and fully incorporated herein by reference and hereinafter referred to as the January Report. Mr. Mahon expressed the clear-cut opinion that there existed a safer alternative design for the airbag system that was not on Ms. Flynn's 2001 Honda Civic. The absence of that alternative safer design contributed to the death of Jacqueline Flynn. In the Report, Mr. Mahon clearly discussed the History; Material Received; Inspection of the Vehicle; relevant factors regarding liability, see pp. 10-13 of Mahon's January Disclosure Report; Mahon also included his Analysis, pp. 8-10; and, finally, the "Opinions" of Mr. Mahon were clearly stated at p. 12. There is no doubt that Mr. Mahon gave an informative and adequate Report on what his testimony and opinions would be.

Mr. Mahon's report went into some detail about the required speed with which an airbag must open in order to provide adequate protection and how the airbags in Ms. Flynn's vehicle failed to meet this standard.  Also included in Mr. Mahon's report was information regarding the types of airbags systems (sensors) utilized by Honda prior to the 1994 model's introduction.  That previous model which utilized multiple sensors (5 of them) met Mr. Mahon's criteria for adequate deployment speed needed to prevent Ms. Flynn's death.  In order to prevent a summary judgment and/or to sustain a verdict a plaintiff is not required to recreate the wheel[1] but only to show by just more than a scintilla of evidence that a safer, economically feasible alternative design exists.  In this case, the alternative design had been successfully marketed for some years by Defendants, therefore the feasibility cannot be questions prior to being dropped as part of a cost cutting measure.  Mr. Mahon's January 2014 report references internal Honda documents finding that dropping the multiple sensor airbag designed resulted in cost savings of approximately $80.00 per unit.  Therefore, the cost of the use of that alternative design is set out and was economically feasible to Honda.  Thus there was more than a scintilla of evidence before the court on the issue of a safer and economically feasible design and the costs of same (no more than $80 per unit).

The Defendants claimed, in their Motion to Strike Mr. Mahon's affidavit (Rec. Doc. No. 131), that Mr. Mahon had never mentioned before his affidavit of November,

---

[1] As noted in *GMC v. Sanchez*, 997 S.W. 2d 584 (Tex. Sup., 1999), "However, the plaintiffs did not have to build and test an automobile transmission to prove a safer alternative design. A design need only prove 'capable of being developed.' The *Restatement (Third) of Torts: Products Liability* takes the position that 'qualified expert testimony on the issue suffices, even though the expert has produced no prototype, if it reasonably supports the conclusion that a reasonable alternative design could have been practically adopted at the time of sale.'"

3

2014, anything about "algorithm" or "jerk", when in fact he had specifically discussed in the January Report, the relevance and the role that "algorithm" and "jerk" play in this case.  See pp. 7-8 of 11 pages of Rec. Doc. 116-1, particularly the last paragraph on page 5.  However, Mr. Mahon's January 2014 report goes on to state that algorithms are not as necessary to the pre-1994 Honda airbag design.  As those airbags use many more sensors, it is not required to extrapolate data via algorithms as required by the system in Decedent's vehicle.  A reasonable trier of fact could infer that the "algorithms" which Defendants reference are not necessarily required for a safer alternative product such as Honda's own pre-1991 design.

    The evidence which was before the Court set forth more than a scintilla of evidence that Honda had itself previously manufactured and marketed a safer alternative design which would have prevented the death of Ms. Flynn and that Honda chose to replace with an inadequate design in order to save $80.00 per car sold.  If Honda had been willing to pay that additional $80.00 the probability is that Miss Flynn would be here today.

    Mr. Mahon stated further that such new system needs to estimate the crash pulse from less information than the older multi-point systems required.  Further, Mr. Mahon also noted in his January, 2014 report, that "the estimation process is known as the algorithm".  As there is very little velocity change in the occupant compartment at the time a deployment may be needed, algorithms often make use of other information such as "jerk, velocity squared", and other manipulations of the basic acceleration signal in both the time and frequency domains.  However, Mahon said, further "algorithm"

development has proved to be very difficult and many vehicles equipped with electronic single point sensing systems have had problems maintaining immunity to unwanted deployments while deploying when needed."  <u>These statements, by Mr. Mahon, completely contradict Defendants' allegation to this Court that Mr. Mahon had said nothing about "algorithm" or "jerk" before his affidavit of November, 2014.</u>  While Mr. Mahon did not go into great detail about the costs of making and installing his safer alternative design, he did make references to the costs savings (such as "$80") experienced by Defendants in changing from the faster multi-point system to the single point system in 1991; and there is no doubt that the Defendants understood that the costs were reasonable and that Defendants in this case sustained no harm in not having, at that point, the complete details of what Mr. Mahon swore-to in his affidavit of November, 2014.  It is unreasonable for the Defendants to argue that such a design is not economically feasible when they themselves successfully marketed it for a number of years.

There is much more than a scintilla of evidence about both a safer alternative design (5-sensor) and that its cost was affordable, no more than $80 per car and that the cost of that design was affordable and reasonable.  The Defendants chose not to depose Mr. Mahon on these opinions.

B. <u>Illness of Mr. Mahon Hindered Plaintiffs' Ability To Adequately Prepare</u>

Shortly after his deposition, Mr. Mahon experienced severe cardiac complications that necessitated several months in the intensive care unit.  Mr. Mahon was hospitalized from May 2, 2014 to August 7, 2014 and again from September 30, 2014 to October 9,

2014 after which he was involved in extensive rehabilitation. This time period of hospitalization is when Counsel would ordinarily be working with their expert. Due to Mr. Mahon's illness this was not the case and, accordingly, caused the preparation of Plaintiffs' Responses to the Summary Judgment Motion to be less effective than they otherwise would have been. Accordingly, Plaintiffs respectfully pray that the order granting the exclusion of Mr. Mahon's testimony and the summary judgment be vacated in the interests of justice and equity.

   C. <u>Newly Developed Evidence Since The Court's Ruling.</u>

The Court correctly states in its opinion that Plaintiffs had propounded discovery requesting evidence of similar instances and that the Defendants had answered "**none**". At the time Plaintiffs received the discovery response they had no reason to doubt the Defendants' veracity, certainly not enough evidence of discovery abuses to have sought the Court's intervention. The response of "none" does not provoke further questioning.

On November 10, 2014; it was reported that the National Highway Safety Administration was investigating Honda for failure to report 1,729 deaths since 2003 dealing with airbags, as required by Federal regulations. While this fact was addressed at the hearing on Plaintiffs' Motion for Continuance, the Court felt, based on Defendants' counsels' statement at the time that the 1,729 unreported deaths involved the Takata airbag "shrapnel" defect which would not have been relevant to this case. This representation to the Court was not accurate.

<u>However</u>, on January 8, 2015; two days after the Court's grant of Summary Judgment in this case, the NHTSA announced $70 million in fines against Honda for

<u>failure to file the required reports</u>. Most relevant to this case though is the subsequent external audit performed by Bowman-Brooke on behalf of Honda and both released by the NHTSA (after the Court's ruling in this case). That report states that <u>less than 10 of the reviewed, non-submitted claims involved the Takata air-bag inflator</u>. In fact, of the 396 claims that were reviewed and summarized in the audit to that point: <u>166 cases (42%) dealt with air bags failing to deploy on a timely basis and 2 involved inadvertent deployment</u>. Please see the report of Bowman-Brooke, page 8, attached hereto as Exhibit "B". The failure to timely deploy, is the heart of Plaintiffs case and proving Honda's knowledge is essential.

Thus, almost half of the non-reported claims, once audited, appear to be similar to this case in that they dealt with the <u>speed</u> of the airbags deploying. This is a far cry from the "none" cited by Defendants in response to a discovery request inquiring of similar failure-to-timely-deploy incidents. In fact, this proves that Defendants' responses to Plaintiffs' discovery simply was not truthful.

Further, as Defendants are required by law to report all accidents involving serious injury or death; Plaintiffs have diligently searched to ascertain whether Ms. Flynn's accident was reported to the government but have been unable to locate any such report.

Plaintiffs respectfully submit to the Court that the now-known existence of at least 166 potentially similar instances is an equitable reason, in addition to the other reasons stated in this Motion, for the Court to vacate its Summary Judgment ruling and grant the previously requested. Not only did the Defendant fail to report these incidents or accidents to the U.S. Government, they failed to timely update their Responses to

7

Plaintiffs' Discovery. Clearly Defendant had this knowledge well before it was reported to the U.S. Government.

## III.

## Request For Relief

Plaintiffs' request the following relief:

    A) That the Court grant a New Trial;

    B) Issue a Scheduling Order allowing for discovery on this newly discovered evidence;

    C) And Plaintiffs' pray the Court for such other and further Relief that Court may deem the Plaintiffs entitled to receive.

## IV.

## CONCLUSION

The Plaintiffs have made it clear that there are many fact issues that preclude summary judgment in this case. In addition to all those stated above, Plaintiffs would show that those other considerations also generate fact issues, precluding summary judgment in this case, to-wit:

    A) There is clearly a fact issue, precluding summary judgment, set out in Mr. Mahon's January Disclosure Report that there was a safer feasible design and that the "costs" do not exceed $80.00 per car.

    B) Such Report, together with the previously discussed questions and answers at Mahon's deposition, and the lack of affirmative questions by the Defendants attorney, raise fact issues, precluding summary judgment, as to

whether there is an alternative design for the airbag system and the costs of that design and the costs of it.

Indeed, it is undisputed that Defendants, though tendered Mr. Mahon's Patents (which are very important in discussing the design of and costs of Mr. Mahon's safer and affordable alternative design of the air bag arrangement on the Honda car in question). Mr. Mahon personally offered to explain the details of his alternative design and its costs in his deposition, counsel for the Defendants blatantly chose not to ask any questions on those matters (the details of the "design" and the "costs").

Under all the facts and circumstances of this case there is more than a scintilla of evidence that tends to prove that the design were sufficiently disclosed to Defendants on a timely basis.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs' request the Court to grant a New Trial; then grant a short continuance with permission to both parties to engage in limited discovery and with permission to Mr. Mahon to amend his Disclosure Statement; and to do all the things stated above, and Plaintiffs' pray for such other relief as may be necessary under all the circumstances.

Respectfully Submitted,

*/s/ Benton Musslewhite*
BENTON MUSSLEWHITE
TBN: 14752000
710 N. Post Oak Rd., Suite 400-L
Houston, Texas 77024
Telephone: (713) 821-3150
Facsimile:  (713) 613-2908

NEWTON B. SCHWARTZ, SR.

9

Fed I.D.:5080
TBN: 17869000
1911 Southwest Freeway
Houston, Texas 77098
Telephone: (713) 630-0708
Facsimile:  (713) 630-0789


JACK W. HARANG
State Bar No.: 15083 (LA)
228 St. Charles Ave, Suite 501
New Orleans, Louisiana 70130
Telephone: (504) 581-7050
Facsimile: (866) 441-6281
***ATTORNEYS FOR PLAINTIFFS***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document in accordance of Federal Rules of Civil Procedure via the CM/ECF system and/or facsimile on this 3rd day of February, 2015.

/s/ *Benton Musslewhite*
BENTON MUSSLEWHITE

Jeffrey S. Hawkins
Prichard, Hawkins, McFarlen & Young, LLP
1010 Reunion Place, Suite 600
San Antonio, Texas 78216
Tel: (210) 477-7400
Fax: (210) 477-7451
jhawkins@phmy.com

Derek S. Whitefield
Dykema Gossett, LLP
333 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 457-1777
Fax: (213) 457-1850
*Attorneys for American Honda Motor Co., Inc.*

Michele R. Sowers
Melissa M. Merlin
Husch Blackwell, LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Tel: (314) 480-1500
Fax: (314) 480-1505
michele.sowers@huschblackwell.com
Melissa.merlin@huschblackwell.com

Sherry Bankhead
Johnson, Trent, West & Taylor, LLP
919 Milam Street, Suite 1700
Houston, Texas 77002
Tel: (713) 860-0559
Fax: (713) 222-2226
sbankhead@JohnsonTrent.com
*Attorney for Continental Automotive and Siemens Corporation*