IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH B. FLYNN, ET AL. | § | |
| | § | |
| VS. | § | CIVIL ACTION:  4:11-CV-03908 |
| | § | |
| AMERICAN HONDA MOTOR CO., INC., | § | |
| ET AL. | § | |

**AMERICAN HONDA MOTOR CO., INC.'S**
**RESPONSE TO PLAINTIFFS' MOTION FOR NEW TRIAL, AND**
**ISSUANCE OF A NEW SCHEDULING ORDER**

TO THE HONORABLE KEITH P. ELLISON:

COMES NOW Defendant American Honda Motor Co., Inc. ("AHM") and submits this

Response to Plaintiffs' Motion for Continuance; for Order Reopening Discovery; and Motion for

New Scheduling Order.[1]

---

[1] Doc. 154 ("Plaintiffs' Motion").

143040                                        1

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDING ..................................................................4

II.     ISSUES PRESENTED AND STANDARD OF REVIEW .................................................5

        A.      Issues Presented ..........................................................................................5

        B.      Standard of Review.......................................................................................6

III.    SUMMARY OF THE ARGUMENT ............................................................................7

IV.     PLAINTIFFS   CANNOT   DEFEAT   SUMMARY   JUDGMENT   BY
        PRESENTING A WHOLLY NEW ALTERNATIVE DESIGN THAT WAS
        NEITHER OFFERED BY THEIR EXPERT NOR INCLUDED IN THEIR
        SUMMARY JUDGMENT RESPONSE ..........................................................................7

        A.      Geoffrey Mahon's Alternative Design in this Case was a Proposal for
                Creating an Alternative Algorithm, not a "5-Sensor System"..................8

        B.      Mahon Never Proposed an Alternative Design Using a "5-Sensor System" ..........9

                1.      Mahon's Report does not Include a Proposed Alternative Design
                        Based on a "5- Sensor System" ....................................................9

                2.      Plaintiffs Waived their Argument by Failing to Assert or Support it
                        in their Summary Judgment Response ......................................11

                3.      Mahon's Report does not Include any Opinions of an Alternative
                        Design that Utilizes a "5-Sensor System" ..................................13

                4.      Plaintiffs Fail to Establish any of the Other Requirements for their
                        New Alternative Design ...........................................................16

V.      PLAINTIFFS SUBMITTED AN AFFIDAVIT FROM THEIR EXPERT,
        DESPITE HIS ILLNESS, AND AFTER OBTAINING A CONTINUANCE.................17

VI.     PLAINTIFFS FALSELY REPRESENT THE HONDA AUDIT, WHICH IN
        ANY EVENT, DOES NOT ESTABLISH THE REQUISITE EVIDENCE OF A
        SAFER ALTERNATIVE DESIGN ..........................................................................19

        A.      Plaintiffs Misrepresent the Findings of the Honda Audit......................19

                1.      The Honda Audit Report Cited Incidents Involving *Non-
                        Deployment* of Airbags not *Late Deployment* as Plaintiffs Allege in
                        this Case...................................................................................20

B.    Plaintiffs Seek Additional Discovery on a Matter that is Completely Irrelevant to the Issue on Summary Judgment .......................................22

VII.    CONCLUSION AND PRAYER ....................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Aleman v. State*,
     803 F.Supp. 10 (S.D. Tex. 1992) ....................................................................11

*Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC,*
     2011 WL 6091807 (S.D. Tex. Dec. 7, 2011)..................................................6, 7

*Ayiba v. Wells Fargo Bank, N.A.,*
     CIV. A. H-10-5017, 2011 WL 6812534 (S.D. Tex. Dec. 22, 2011),
     *aff'd in part*, 497 Fed. Appx. 434 (5th Cir. 2012) .............................................6

*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.,*
     770 F.3d 322 (5th Cir. 2014) ...............................................................15, 16, 23

*Damian v. Bell Helicopter Textron, Inc.,*
     352 S.W.3d 124 (Tex. App.—Fort Worth 2011, pet. denied) ...........................15

*Diamond-Brooks v. City of Webster*,
     12-CV-3482, 2014 WL 1761612 (S.D. Tex. Apr. 30, 2014)....................6, 11,23

*Gilbert v. Outback Steakhouse of Florida Inc.*,
     295 Fed. Appx. 710 (5th Cir. 2008).................................................................11

*Goodner v. Hyundai Motor Co.,*
     650 F.3d 1034 (5th Cir. 2011) ..........................................................................23

*Honda of Am. Mfg., Inc. v. Norman,*
     104 S.W.3d 600 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) .............15

*In re BP Shareholder Derivative Litig.,*
     No. 4:10–CV–3447, 2011 WL 5880946 (S.D. Tex. Nov. 23, 2011)....................6

*Isaac v. Nueces County, Tex.*,
     CIV. A. C-05-437, 2006 WL 1967038 (S.D. Tex. July 12, 2006) ....................11

*Manemann v. Tex. Dept. of Criminal Justice*,
     CIV.A. H-12-2239, 2014 WL 905876 (S.D. Tex. Mar. 7, 2014) ......................13

*Phillips v. TXU Corp.*,
    3:05 CV 1588 B, 2006 WL 3900112 (N.D. Tex. Dec. 29, 2006)......................................13

*Provident Life & Acc. Ins. Co. v. Goel*,
    274 F.3d 984 (5th Cir. 2001) .........................................................................................13

*Queen Trucking, Inc. v. Gen. Motors Corp.*,
    CIV.A.1:06-CV-052-C, 2007 WL 4458919 (N.D. Tex. June 8, 2007) ...........................13

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) ...........................................................................................6

*Seatrax, Inc. v. Sonbeck Intern., Inc.*,
    200 F.3d 358 (5th Cir. 2000) .........................................................................................11

*Schiller v. Physicians Res. Group Inc.*,
    342 F.3d 563 (5th Cir. 2003) ...........................................................................................7

*Templet v. HydroChem Inc.*,
    367 F.3d 473 (5th Cir. 2004) ...........................................................................................7

*Valles v. Frazier*,
    CIV. A. SA08CA501-XR, 2009 WL 3242584 (W.D. Tex. Oct. 1, 2009) ........................6

*Whitmire v. Terex Telelect, Inc.*,
    390 F.Supp.2d 540 (E.D. Tex. 2005).............................................................................11

# I.
## NATURE AND STAGE OF THE PROCEEDINGS

The Court is familiar with the underlying facts of this product liability claim.   AHM briefly restates its summary judgment motion and the Court's ruling:

On October 2, 2014, AHM moved for judgment on all of Plaintiffs' claims including those based on theories of design, manufacturing and marketing defects.   *See* Motion for Summary Judgment (Doc. 116) at 8-25.   After obtaining a continuance, Plaintiffs filed their response on November 6, 2014.   *See* Plaintiffs' Summary Judgment Response (Doc. 126). Plaintiffs' response included only two exhibits – the deposition and affidavit of Plaintiffs' expert

Geoffrey Mahon.  *Id.*, Ex. A and Ex. B.  Defendants jointly objected to the numerous new

opinions Mahon offered in his affidavit that he did not include in his report.  *See* Defendants'

Joint Objections to Plaintiffs' Summary Judgment Evidence (Doc. 130).  The Court sustained the

majority of Defendants' objections and struck most of Mahon's affidavit, including his new

opinions.  *See* Order (Doc. 142).

On December 5, 2014, Plaintiffs requested another continuance; that discovery be re-

opened; and that the Court enter a new scheduling order.  *See* Plaintiffs' Motion for Continuance

(Doc. 141).  The Court heard this motion, as well as AHM's summary judgment motion on

December 10, 2014.

On January 6, 2015, the Court granted AHM summary judgment on all of Plaintiffs'

outstanding claims.  *See* Order (Doc. 150) at 10 (granting "summary judgment in favor of Honda

on Plaintiffs' claims of design defect, manufacturing defect, and marketing defect, under all

asserted theories" and on abandoned claim of misrepresentation).  The Court specifically granted

summary judgment on Plaintiffs' design defect claim because Plaintiffs failed to offer any

evidence of the economic feasibility of their proposed safer alternative design, an alternative

algorithm for use in deploying the airbags.  *Id.* at 8-9.

## II.
## ISSUES PRESENTED AND STANDARD OF REVIEW

### A.  **Issues Presented**

1.  Whether manifest error in the Court's summary judgment order is established by
    Plaintiffs' allusion to the economic feasibility of a wholly new suggested safer
    alternative design (involving multiple sensors) rather than the alternative
    algorithm design actually relied upon by their expert.

2.  Whether manifest error in the Court's summary judgment order is established by
    Plaintiffs' complaints about ineffective assistance from their expert, Geoffrey
    Mahon, when: (a) Plaintiffs were granted a continuance of their summary
    judgment response due to Mahon's illness; (b) Mahon substantively participated

in that response; and (c) Plaintiffs specify no further relevant and admissible evidence Mahon might have contributed had Plaintiffs received *more* time.

3.    Whether manifest error in the Court's summary judgment order is established by the findings of the Honda Audit that Plaintiffs misrepresent and that provide no evidence regarding the issue on summary judgment – the existence of a safer alternative design.

## B.    Standard of Review

Plaintiffs style their motion as one for new trial pursuant to Rule 59. Plaintiffs' Motion at 1. Because there was no trial in this case, and the Court instead granted summary judgment, Plaintiffs' Motion is more accurately described as a motion for reconsideration. *See Diamond-Brooks v. City of Webster*, 12-CV-3482, 2014 WL 1761612, at *1 (S.D. Tex. Apr. 30, 2014) (reviewing motion to reconsider order granting summary judgment); *Valles v. Frazier*, CIV.A.SA08CA501-XR, 2009 WL 3242584, at *2 (W.D. Tex. Oct. 1, 2009) (same).

Motions for reconsideration are analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *See Ayiba v. Wells Fargo Bank, N.A.*, CIV. A. H-10-5017, 2011 WL 6812534, at *2 (S.D. Tex. Dec. 22, 2011), *aff'd in part,* 497 Fed. Appx. 434 (5th Cir. 2012) (citing *Hamilton Plaintiffs v. Williams Plaintiffs,* 147 F.3d 367, 371 n. 10 (5th Cir. 1998)). Rule 59(e) governs when the reconsideration motion is filed within 28 days of the challenged order. *Ayiba*, 2011 WL 6812534 at *2 (citing *Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC,* 2011 WL 6091807, at *5 (S.D. Tex. Dec. 7, 2011) and *In re BP Shareholder Derivative Litig.,* No. 4:10–CV–3447, 2011 WL 5880946, at *2 (S.D. Tex. Nov. 23, 2011)).

A motion under Rule 59(e) must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Diamond-Brooks*, 2014 WL 1761612, at *1 (quoting *Ross v. Marshall,* 426 F.3d 745, 763 (5th Cir. 2005)). Motions to reconsider "cannot be used to

raise arguments which could, and should, have been made before the judgment issued."   *Id.*

(quoting *Schiller v. Physicians Res. Group Inc.,* 342 F.3d 563, 567 (5th Cir. 2003)).   Further,

"[r]econsideration under Rule 59(e) is an extraordinary remedy that courts should use sparingly."

*Ayiba*, 2011 WL 6812534, at *3 (citing *Templet v. HydroChem Inc.,* 367 F.3d 473, 479 (5th Cir.

2004)).

## III.
## SUMMARY OF THE ARGUMENT

Plaintiffs have no viable basis for reconsideration or a new trial.   Plaintiffs' motion

presents, for the first time, a new alternative design that: (1) was not offered by Plaintiffs' expert

in his report or deposition; and (2) was not presented in Plaintiffs' summary judgment response.

The illness of Plaintiffs' expert, Geoffrey Mahon, is also not a basis for overturning the Court's

summary judgment order.   Plaintiffs requested and received a continuance for their summary

judgment response due to Mahon's health.   Plaintiffs subsequently included an affidavit from

Mahon in their summary judgment response (consisting mostly of new opinions).   And Plaintiffs

do not identify anything relevant and admissible Mahon would have contributed given additional

time they did not seek.   Finally, Plaintiffs misrepresent the findings of the Honda Audit as "new

evidence" warranting reconsideration.   The Honda Audit did not, as Plaintiffs allege, identify any

unreported incidents involving delayed deployment of airbags.   Moreover, any such evidence is

completely irrelevant to the basis for the Court's summary judgment order – the lack of evidence

of a safer alternative design.

## IV.
## PLAINTIFFS CANNOT DEFEAT SUMMARY JUDGMENT BY PRESENTING A WHOLLY NEW ALTERNATIVE DESIGN THAT WAS NEITHER OFFERED BY THEIR EXPERT NOR INCLUDED IN THEIR SUMMARY JUDGMENT RESPONSE

Plaintiffs contend there was evidence of the economic feasibility of a safer alternative

design for an alternative airbag system – a "5-sensor system" – that precludes summary judgment. Plaintiffs' Motion at 5. Plaintiffs' argument fails for four reasons:

(1)     Plaintiffs are offering a new alternative design that their expert never included in his report;

(2)     Plaintiffs waived this argument by failing to raise it in their response to AHM's summary judgment motion;

(3)     the "evidence" Plaintiffs rely on is not in the summary judgment record; and

(4)     the "evidence" Plaintiffs cite does not actually discuss either an alternative design based on multiple sensors or its economic feasibility.

**A.     Geoffrey Mahon's Alternative Design in this Case was a Proposal for Creating an Alternative Algorithm, not a "5-Sensor System"**

In their motion, Plaintiffs assert – for the very first time – that their safer alternative design for their design defect claim is a multiple sensor system (for triggering the airbag deploy) that was found on prior generations of Honda Civics. Plaintiffs' Motion at 3. But Plaintiffs are offering a new alternative design that is completely different from the one Mahon actually offered in his report and that was the subject of AHM's summary judgment motion. AHM challenged the evidence in support of Plaintiffs' safer alternative design for an alternative algorithm to trigger airbag deployment. *See* AHM's Motion for Summary Judgment (Doc. 116) at 8-16. This included AHM's argument that Plaintiffs had no evidence that Mahon's proposed safer alternative design was economically feasible as required by Section 82.005 of the Texas Civil Practice and Remedies Code. *Id.* at 13-15. AHM challenged Mahon's proposed alternative design concept for an algorithm because that was the only alternative design he offered in his report and at his deposition. Having lost on Mahon's disclosed alternative design, Plaintiffs cannot offer a new alternative design.

**B.      Mahon Never Proposed an Alternative Design Using a "5-Sensor System"**

     **1.      Mahon's Report does not Include a Proposed Alternative Design Based on a "5- Sensor System"**

In his report, Mahon offers six opinions, none of which proposes an alternative design based on a "5-sensor system." Specifically, Mahon's report provided the following opinions:

1.      Based upon the report of Mr. Irwin [Plaintiffs' accident reconstruction expert], the vehicle sustained a velocity change in excess of 35 mph, and perhaps as high as about 40 mph.

2.      It is a reasonable engineering certainty that the air bag [sic] deployed later than the required time (as determined by the physical evidence) for this event.

3.      The late deployment allowed Flynn to be injured in the crash and was a proximate cause of those fatal injuries.

4.      The Civic's air bag [sic] sensing system was unreasonably unsafe and dangerous due to defective design.

5.      An alternative design existed whereby Honda could have run sufficient crash tests to provide their air bag [sic] crash sensor supplier with data for SOI crashes such as this event. Based upon these data [sic], the supplier would alter the sensor system accordingly, which would have resulted in a more timely deployment in this crash.

6.      It was unreasonable for Honda to base the sensor system of the Civic on insufficient crash tests providing no basis to sense this foreseeable event.

*See* Plaintiffs' Motion, Ex. A at 11. Mahon's entire alternative design relied on running numerous crash tests that would provide data for creating a new algorithm used to trigger the airbag's deployment, which AHM explained and challenged in its motions for summary judgment and to exclude Mahon. *See* AHM's Motion for Summary Judgment (Doc. 116) at 10-13; *see also* Defendants' Joint Motion to Exclude Mahon (Doc. 128) at 12-14 (discussing Mahon's alternative algorithm design).

At his deposition, Mahon confirmed that his only alternative design for this case was an

alternative algorithm not a different design for the sensors.

> Q.    <u>Have you specifically formulated an alternative design for this case</u>?
>
> A.    <u>I have not developed the alternative algorithm which is what it's going to be</u>, first of all, because all the relevant crash tests haven't been run and even the crash tests that have been run I don't have the digital data.
>
> Q.    So the answer is you have not developed the alternative design that you advocate for this case, correct?
>
> A.    I have not designed it to completion. I can talk about the elements of it . . . .

*See* Plaintiffs' Summary Judgment Response, (Doc. 126), Ex. A at 55 (Mahon's Deposition) (emphasis added). Notably, Mahon did not submit any errata sheet for his deposition that would have changed his response to indicate that he was also offering a "5-sensor system" as another alternative design.

Plaintiffs assert that AHM never deposed Mahon about the sensor system. Plaintiffs' Motion at 5. This is false. Not only did AHM question Mahon on this topic, Mahon stated that he was not offering opinions regarding the sensors for the airbag system.

> Q.    And this vehicle has sensors in the crush zone, correct?
>
> A.    That is correct.
>
> Q.    So in this case am I correct you are not expressing any opinion about the location of the sensing elements on the Civic?
>
> A.    While – let me say this, that while the location could have been improved somewhat it's a fairly common location and depending on what one does with the third sensor could be perfectly fine.
>
> Q.    All right, let me ask a different way, your expert report does not indicate that you have any defect opinion relating to the location of the sensor, is that correct?
>
> A.    That's correct.

Q.     And you don't intend at this time to express opinions that the
       sensor should have been mounted in a different location, correct?

A.     That's correct.

*See* Plaintiffs' Summary Judgment Response, (Doc. 126), Ex. A at 135-36.[2]

Mahon's only safer alternative design in his report was his alternative algorithm.   AHM

challenged this alternative design for lack of evidence of economic feasibility, and the Court

found there was no such evidence.   *See* Order (Doc. 150) at 7-9.   Having lost on this issue,

Plaintiffs cannot offer a new and undisclosed alternative design theory as a basis for a new trial.

Summary judgment is not a game of "Whack-a-Mole" in which a plaintiff may offer new

liability theories after the court disposes of the disclosed theory.

### 2.     Plaintiffs Waived their Argument by Failing to Assert or Support it in their Summary Judgment Response

Assuming, *arguendo*, that Mahon did include a proposed alternative design based on a

"5-senor system" in his report, the Court must still deny Plaintiffs' motion because Plaintiffs did

not include this argument in their summary judgment response.

Arguments not raised in a summary judgment response are waived.   *E.g.*, *Gilbert v.

Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 715 (5th Cir. 2008); *Seatrax, Inc. v.

Sonbeck Intern., Inc.*, 200 F.3d 358, 364-65 (5th Cir. 2000); *Isaac v. Nueces County, Tex.*, CIV.

A. C-05-437, 2006 WL 1967038, at *10 (S.D. Tex. July 12, 2006); *Whitmire v. Terex Telelect,

Inc.*, 390 F.Supp.2d 540, 548 (E.D. Tex. 2005); *Aleman v. State*, 803 F.Supp. 10, 12 n. 1 (S.D.

Tex. 1992); *see also Diamond-Brooks*, 2014 WL 1761612, at *1 (stating motions to reconsider

cannot be used to raise arguments that should be raised prior to judgment).   Because Plaintiffs'

---

[2] In Mahon's affidavit that Plaintiffs submitted with their summary judgment response, Mahon again stated that his alternative design in this case was an algorithm.  *See* Defendants' Joint Objections to Plaintiffs' Summary Judgment Evidence, Mahon Affidavit, ¶ 24.   The Court ultimately excluded the majority of Mahon's affidavit finding it contained new opinions that were not in his original report.   *See* Memorandum and Order (Doc. 142) at 5.

summary judgment response makes no reference to an alternative design using a "5-senors system" or that such an alternative design was economically feasible, that argument is waived. *See* Plaintiffs' Response to AHM's Summary Judgment Motion (Doc. 126) at 4-7.

Similarly, Plaintiffs offered no admissible summary judgment evidence as to the economic feasibility of an alternative design based on the airbag sensors rather than the alternative algorithm that Mahon identified in his report. Plaintiffs attached only two documents to their summary judgment response: Mahon's deposition testimony and Mahon's affidavit. *See* Plaintiffs' Response to AHM's Summary Judgment Motion (Doc. 126), Exhibits A and B. Again, Mahon testified he would not be offering opinions regarding the airbag sensors. And as for Mahon's affidavit, the Court sustained the majority AHM's objections to the numerous, undisclosed opinions that Mahon offered for the first time in the affidavit. *See* Memorandum and Order (Doc. 142). Consequently, the Court excluded the majority of Mahon's affidavit from the summary judgment proceeding. *Id.* at 5.

The only source Plaintiffs identify for Mahon's supposed alternative design using a "5-sensor system" is Mahon's expert report, which they attach to their motion. Plaintiffs' Motion at 2, Ex. A. According to Plaintiffs, Mahon's report was part of the summary judgment record.

> Plaintiffs would respectfully show unto the Court that more than a scintilla of evidence of the feasibility and cost of a safer alternative design was timely produced in the expert's January 2014 initial Report, and that was also before the Court in response to the motion for summary judgment.

*Id.* at 2 (emphasis added). But this assertion is false. Plaintiffs did *not* include Mahon's report with their summary judgment response. *See* Plaintiffs' Summary Judgment Response (Doc. 126). Again, the only evidence Plaintiffs offered with their response was Mahon's deposition and his affidavit. *Id.,* Ex. A and Ex. B.

Plaintiffs' waiver is two-fold. In their summary judgment response, Plaintiffs failed to

raise the argument that there was a safer alternative design based on a "5-sensor system" and that it was economically feasible.  Plaintiffs compounded that waiver by then failing to attach the supposed evidence for their argument – Mahon's report – to their summary judgment response.[3] Accordingly, Mahon has waived any argument based on a supposed alternative design using a "5-sensor system."

### 3. Mahon's Report does not Include any Opinions of an Alternative Design that Utilizes a "5-Sensor System"

Plaintiffs insist that Mahon opined about a safer alternative utilizing a multi-sensor system in his report.  Plaintiffs state:

> Also included in Mr. Mahon's report was information regarding the types of airbags systems (sensors) utilized by Honda prior to the 1994 model's introduction.  That previous model which utilized multiple sensors (5 of them) met Mr. Mahon's criteria for adequate deployment speed needed to prevent Ms. Flynn's death. . . .  In this case, the alternative design had been successfully marketed for some years by Defendant, therefore the feasibility cannot be questions [sic] prior to being dropped as a part of cost cutting measure.  Mr. Mahon's January 2014 report references internal Honda documents finding that dropping the multiple sensor airbag designed [sic] resulted in cost savings of approximately $80.00 per unit.  Therefore, the costs of the use of that alternative design is set out and was economically feasible to Honda.  Thus there was more than a scintilla of evidence before the court on the issue of a safer and economically feasible design and the costs of the same (no more than $80 per unit).
>
> ***
>
> There is much more than a scintilla of evidence of both a safer alternative design (5-senor) and that its cost was affordable, no more than $80 per car and that the cost of that design was affordable and reasonable.

---

[3] In addition, even if Plaintiffs had attached Mahon's report to their summary judgment response, it would be inadmissible hearsay that could not create a fact issue on summary judgment. *See Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) (stating "Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment"); *see also Manemann v. Tex. Dept. of Criminal Justice*, CIV.A. H-12-2239, 2014 WL 905876, at *3 (S.D. Tex. Mar. 7, 2014) (citing *Provident* and sustaining hearsay objections to expert reports); *Queen Trucking, Inc. v. Gen. Motors Corp.*, CIV.A.1:06-CV-052-C, 2007 WL 4458919, at *1 (N.D. Tex. June 8, 2007) (same); *Phillips v. TXU Corp.*, 3:05 CV 1588 B, 2006 WL 3900112, at *3 (N.D. Tex. Dec. 29, 2006) (same).

Plaintiffs' Motion at 3, 5. Plaintiffs fail to quote the actual language from Mahon's report that supposedly supports this assertion. That omission is not accidental.

Reading Mahon's report, it is clear that he is not offering any opinion about a safer alternative design using a "5-sensor system" or that such a design was economically feasible, but instead was simply discussing the evolution of airbag systems:

> Earlier model years of Honda vehicles (including Accords up to 1994) utilized multipoint electro mechanical sensors to detect crashes. Multipoint systems included both crush zone (the front section of the vehicle which experiences the crash early enough to discriminate a deployment event from a non-deployment event) and passenger compartment based sensors. Depending on the vehicle structure, vehicle manufacturers utilized as many as 5 crash sensors in a multipoint system to ensure coverage of foreseeable events. Honda determined that they could save about 9,400 yen (about $80 in April 1991) by switching to a single point electronic sensor (per the BJG Plan) in the occupant compartment as the primary sensing mechanism for crashes.

Plaintiffs' Motion, Ex. A at 7.

From Mahon's actual statement in his report, the Court should draw the following conclusions:

First, Mahon does not state that he is proposing a multi-sensor system as an alternative design for the 2001 Honda Civic. Mahon never uses the words "alternative design" when discussing airbag sensors. *Id.* Nor does Mahon otherwise suggest, intimate or hint that a multi-sensor system is a safer alternative design for the 2001 Civic. Mahon's discussion of possible cost savings in 1991 is just part of his general background discussion concerning airbag systems and their various components. But a general history lesson in airbag systems is not an opinion of a safer alternative design for the 2001 Civic. [4]

Second, Plaintiffs' assertion that Mahon proposed a safer alternative design using a "5-

---

[4] The Court will recall that the subject vehicle was a 2001 Honda Civic. The 2001 Civic is a seventh-generation Civic. Models prior to 1994 include the fifth-generation Civic as well as all other earlier generations.

sensor system" is false.   Plaintiffs specifically cite a "5-sensor system" as Mahon's other proposed alternative design in their motion for new trial.   Plaintiffs' Motion at 3, 5.   Citing Mahon's report, Plaintiffs state that the previous model Civic "utilized multiple sensors (5 of them) . . . ."   *Id.* at 3.   Mahon, however, does not state this in his report.   Instead, Mahon states: "[d]epending on the vehicle structure, vehicle manufacturers utilized as many as 5 crash sensors in a multipoint system to ensure coverage of foreseeable events."   Plaintiffs' Motion, Ex. A at 7. Mahon is not referring to the previous model Civic as having a "5-sensor system"; he is speaking about vehicle manufacturers generally.

Third, Mahon never makes any reference in this part of this report to "economic feasibility."   *Id.*   Mahon does not state or suggest that a "5-sensor system" is economically feasible in the 2001 Civic.   *Id.*   Instead, Mahon merely notes that – in 1991 – Honda supposedly determined that it would save approximately $80 per vehicle by switching from a multi-sensor system to a single sensor system.[5]

Fourth, even assuming that Mahon intended this excerpt from his report to be an opinion regarding the economic feasibility of an alternative design for the 2001 Civic, it is not actual evidence of economic feasibility.   As the Court noted in its summary judgment order, to establish economic feasibility of an alternative design, the plaintiff must introduce proof of the cost of incorporating the technology *into the product at issue*.   *See* Order (Doc. 150) at 8; *see also Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 334 (5th Cir. 2014); *Honda of Am. Mfg., Inc. v. Norman*, 104 S.W.3d 600, 607 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 152-53 (Tex. App.—Fort Worth 2011,

---

[5] Mahon acknowledged in his deposition that the 2001 Civic had multiple sensors for triggering the front airbags. Mahon testified that there were two sensors mounted at the front of the vehicle.   *See* Plaintiffs' Summary Judgment Response (Doc. 126), Ex. A at 135.   He stated there was a third sensor in the electronic control unit for the airbag system.   *Id.*   The 2001 Civic did not have a single sensor for triggering the airbags.

pet. denied).  Evidence of the potential costs savings from switching from a single-sensor system to a multi-sensor system in one model is not evidence of the cost of incorporating that technology into a different vehicle *ten years later*.

In sum, Mahon neither offered a "5-sensor system" as an alternative design nor does his report constitute any evidence of the costs of incorporating this supposed design into the 2001 Civic.

### 4.    Plaintiffs Fail to Establish any of the Other Requirements for their New Alternative Design

Assuming, *arguendo*, that Mahon's report includes an opinion that a "5-sensor system" is another safer alternative design for the subject vehicle, Plaintiffs' argument still fails because they offer no proof of the *other* requirements for a safer alternative design.

AHM asserted multiple challenges to Mahon's actual alternative design – the alternative algorithm.  In addition to challenging the lack of evidence of economic feasibility, AHM also challenged the lack of evidence that Mahon's alternative design would not impose an equal or greater risk of harm.  Further, AHM challenged the absence of any testing to establish the alternative design would have prevented or significantly reduced the risk of the claimant's damages.  *See* AHM's Motion for Summary Judgment (Doc. 116) at 15-16; Defendants' Joint Supplement to the Motions for Summary Judgment (Doc. 122) at 4-6; AHM's Reply in Support of its Motion for Summary Judgment (Doc. 129) at 5-7.

Mahon fails to state in his report that a "5-sensor system" would not impose an equal or greater risk of harm if incorporated into the 2001 Civic.  Motion, Ex. A at 7.  Nor does Mahon identify any testing that he performed – as required by *Casey*[6] – to establish that a "5-sensor system" would have prevented or significantly reduced the risk of Jacqueline Flynn's death.  *Id.*

---

[6] *Casey*, 770 F.3d at 332; *see* Order (Doc. 150) at 7 (summary judgment ruling discussing *Casey*).

Mahon's report contains no such opinions, let alone any analysis to support such opinions. Plaintiffs cannot offer a new and undisclosed alternative design as a basis for reconsideration when that design lacks the same legal requirements of a safer alternative design as the actual alternative design that Mahon provided.

**V.**
**PLAINTIFFS SUBMITTED AN AFFIDAVIT FROM THEIR EXPERT,**
**DESPITE HIS ILLNESS, AND AFTER OBTAINING A CONTINUANCE**

Plaintiffs next argue that the Court should grant a new trial due to Mahon's health. Plaintiffs maintain Mahon's ill health prevented them from effectively preparing their summary judgment response.

> Shortly after his deposition, Mr. Mahon experienced severe cardiac complications that necessitated several months in the intensive care unit. Mr. Mahon was hospitalized from May 2, 2014 to August 7, 2014 and again from September 30, 2014 to October 9, 2014, after which he was involved in extensive rehabilitation. This time period of hospitalization is when Counsel would ordinarily be working with their expert. Due to Mr. Mahon's illness, this was not the case and, accordingly, caused the preparation of Plaintiffs' responses to the summary judgment motion to be less effective than they otherwise would have been.

*See* Motion at 5-6. This argument fails for four reasons.

First, Mahon was available to assist with Plaintiffs' summary judgment response. Plaintiffs make the unverified assertion that Mahon was hospitalized on May 2 through August 7, 2014 and from September 30 to October 9, 2014. Mahon submitted his expert report on January 14, 2014, and Defendants deposed him on April 14 and 15, 2014. *See* Plaintiffs' Motion, Ex. A (Mahon's Report); Plaintiffs' Summary Judgment Response (Doc. 126), Ex. A (Mahon's deposition). At that point, Mahon's opinions were set. There was no "work" for him to do, vis-à-vis AHM's summary judgment motion, until AHM filed its motion on October 2, 2014. *See* AHM's Motion for Summary Judgment (Doc. 116). Mahon was out of the hospital

the following week and clearly was available to assist with the summary judgment response because, as discussed further below, he actively assisted with that response by providing a lengthy affidavit.

Second, Plaintiffs requested and received an extension to file their summary judgment response due to Mahon's health, claiming additional time was necessary to secure affidavits from Mahon as well as Plaintiffs' other expert, Steve Irwin. *See* Plaintiffs' Motion for Continuance (Doc. 119-4) at 1-2. Plaintiffs' motion did not indicate that Mahon had recently been hospitalized. *See* Plaintiffs' Motion for Continuance. *Id.* The Court then extended Plaintiffs' deadline to file their summary judgment response to November 6, 2014. *See* Order (Doc. 123). Plaintiffs did not request any additional extension on the basis of Mahon's alleged unavailability to assist with Plaintiffs' summary judgment response.

Third, Plaintiffs' summary judgment response included Mahon's affidavit (although it did not include an affidavit from Steve Irwin as indicated in the continuance request). *See* Plaintiffs' Summary Judgment Response (Doc. 126). Plaintiffs were given additional time to secure an affidavit from Mahon. Plaintiffs availed themselves of that opportunity and included Mahon's affidavit with their summary judgment response.

Finally, Plaintiffs vaguely claim that, due to Mahon's illness, the preparation of their summary judgment response was "less effective than [it] otherwise would have been." *See* Plaintiffs' Motion at 6. But Plaintiffs do not identify any additional relevant and admissible information they would have been included in Mahon's affidavit had they been given more time to submit their summary judgment response beyond the extension the Court granted them. [7]

---

[7] Again, the affidavit Mahon submitted with Plaintiffs' summary judgment response consisted primarily of undisclosed and untimely opinions that the Court ultimately excluded. There is no reason to believe that any additional opinions Plaintiffs would have included with Mahon's affidavit would have been timely disclosed in Mahon's expert report and, therefore, would constitute admissible summary judgment evidence.

In sum, Plaintiffs got the illness-based extension they requested and submitted Mahon's affidavit with their summary judgment response.  Plaintiffs cannot obtain a new trial for failing to include other opinions in the affidavit – opinions which they do not even identify in their motion.

**VI.**
**PLAINTIFFS FALSELY REPRESENT**
**THE HONDA AUDIT, WHICH IN ANY EVENT, DOES NOT**
**ESTABLISH REQUISITE EVIDENCE OF A SAFER ALTERNATIVE DESIGN**

Plaintiffs once again rely on Honda's audit of under-reported incidents to federal regulators (the "Honda Audit"), as a basis for avoiding summary judgment.  *Compare* Plaintiffs' Motion at 6-8 *with* Plaintiffs' Motion for Continuance (Doc. 141) at 1-4.  Plaintiffs' argument fails for two reasons.  First, Plaintiffs misrepresent the results of the Honda Audit.  The report Honda commissioned refers only to unreported instances of airbag ***non-deployment***; the report does not refer to any unreported incidents involving allegations of ***late-deployment*** as Plaintiffs allege.  Second, Plaintiffs still fail to explain how any of these under-reported incidents would establish evidence of a safer alternative design – the core argument of AHM's summary judgment motion and the basis of the Court's summary judgment order.

**A.**     **Plaintiffs Misrepresent the Findings of the Honda Audit**

Plaintiffs previously raised the issue of the Honda Audit when they sought a continuance of the summary judgment hearing to conduct further discovery.  *See* Plaintiffs' Motion for Continuance (Doc. 141).  AHM extensively addressed Plaintiffs' argument in its Response to Plaintiffs' Motion for Continuance (Doc. 144).  The Court denied Plaintiffs' request stating:

> In this instance, the Court simply cannot find good cause for reopening discovery pursuant to Rule 16(b)(4).  Plaintiffs already conducted discovery on other incidents involving the airbags in Honda vehicles. Specifically, Plaintiffs sought documents related to "'all litigations, suits, claims, arbitrations, mediations, lawsuits, administrative hearings and all

investigations' including all reports in response to all U.S. government regulations, all state regulations, all European regulations with the EU and all Asian, Central and South American regulations." (Doc. No. 144 at, 19, quoting Exh. 5, Honda's Objections and Responses to Plaintiffs' First Request for Production.)   In response, Honda objected to Plaintiff's request, but also stated that it "conducted a reasonable search for <u>lawsuit complaints</u> in which it is alleged that the driver of a 2001 Honda Civic was injured <u>because the driver airbag did not deploy timely in a crash</u>," and that Honda found no such complaints.   (Doc. No. 144, Exh. 5 at 7.) Plaintiffs have presented no evidence and made no argument to the Court that the search conducted by Honda in response to Plaintiffs' discovery request was inadequate in light of Honda's failure to report claims to federal regulators.

*See* Order (Doc. 150) at 3-4 (emphasis added).

Plaintiffs now claim, wrongly, that AHM's discovery responses were not merely inadequate but were actually false.  Citing the Honda Audit report, Plaintiffs state:

> . . . of the 396 claims that were reviewed and summarized in the audit to that point: <u>166 cases (42%) dealt with air bags failing to deploy on a timely basis</u> and 2 involved inadvertent deployment.  Please see the report of Bowman-Brooke, page 8, attached hereto as Exhibit "B".  <u>The failure to timely deploy</u>, is the heart of Plaintiffs case and proving Honda's knowledge is essential.
>
> Thus, almost half of the non-reported claims, once audited, appear to be similar to this case in that they dealt with the speed of the airbags deploying.  This is a far cry from the "none" cited by Defendants in response to a discovery request inquiring of similar failure-to-timely-deploy incidents.   In fact, <u>this proves that Defendants' responses to Plaintiffs' discovery simply was not truthful</u>.

Plaintiffs' Motion at 7 (emphasis added).  Plaintiffs' assertion is incorrect.

### 1. The Honda Audit Report Cited Incidents Involving *Non-Deployment* of Airbags not *Late Deployment* as Plaintiffs Allege in this Case

As part of its audit, AHM commissioned a report by Bowman and Brooke (the "Report").

*See* Plaintiffs' Motion, Ex. B.  The Report included multiple stages of review.  The First Phase Review discussed 396 "files" – not "claims" as Plaintiffs describe them – that were determined to be subject to federal reporting requirements.  *See* Plaintiffs' Motion at 7-8.  Importantly, all

these files involved "not-in-suit matters." *Id.* at 7.   The Report shows that none of those files involved late or untimely deployment of the airbag as Plaintiffs allege in this case.   Rather, the incidents Plaintiffs cite as examples of late deployments are actually instances in which the airbags did not deploy at all.   Specifically, the Report states:

> Third, the complaints or factual information in the files raised in these matters also involved a variety of issues.   This supports the conclusion that there was no deliberate attempt to conceal TREAD-reportable matters that dealt with one particular allegation.   These allegations in the 396 files identified as reportable in the first review fell under the following categories:
>
> 1.   **Airbag non deployment**: 166 (42% of the total)
>
> 2.   Inadvertent airbag deployment: 21
>
> 3.   Airbag injury: 17 (mostly abrasions)
>
> 4.   Improper airbag deployment: 2
>
> 5.   Allegations of unintended acceleration: 25 (6% of the total)
>
> 6.   Allegations regarding seat belts: 24 (6% of the total)
>
> 7.   Allegations involving brakes: 24 (6% of the total)
>
> 8.   Lacerations from sharp edges on a door: 13
>
> 9.   Injuries caused by a rear hatch door hitting someone outside the vehicle: 10

*Id.*, Ex. B. at 9 (emphasis added).

The Report does not state 166 cases "dealt with air bags failing to deploy on a timely basis" as Plaintiffs represent to the Court.   *See* Plaintiffs' Motion at 7.   Rather, the Report plainly states that the 166 cited files concerned "airbag non deployment".   *Id.*, Ex. B. at 9.   Plaintiffs are falsely equating incidents of non-deployment with incidents of late deployment.[8]   In short,

---

[8] Mahon testified that a timely deployment for the 2001 Civic's airbags would be between 20 and 30 milliseconds. *See* Plaintiffs' Summary Judgment Response (Doc. 126), Ex. A at 109.   He subsequently opined that the driver's

Plaintiffs are mischaracterizing the Report. There is no reference in either the text of the Report, or the supporting documentation attached to it, that includes any reference to late or delayed airbag deployments. *Id*.

Plaintiffs' state that the Report proves "that Defendants' responses to Plaintiffs' discovery simply was not truthful." As the actual Report shows, however, it includes no references to late or untimely deployments. Moreover, Plaintiffs ignore AHM's discovery response. In response to Plaintiffs' Request for Production No. 2, AHM objected to this request on several grounds. *See* AHM's Response to Plaintiffs' Motion for Continuance (Doc. 144), Ex. 4. Subject to those objections, AHM stated it:

> . . . conducted a reasonable search for <u>lawsuit complaints</u> in which it is alleged that the driver of a 2001 Honda Civic was injured <u>because the driver airbag did not deploy timely in a crash</u>. No such <u>lawsuit complaints</u> were located other than the instant case.

*Id*. (emphasis added). AHM stated it found no lawsuit complaints in which it was alleged that the driver's airbag in a 2001 Civic did not timely deploy. The review of 396 files that Plaintiffs cite as "proof" that AHM's responses were untruthful consisted entirely of incidents that were "not-in-suit matters". Plaintiffs' Motion, Ex. B at 7-8. None of those files were lawsuits, let alone lawsuits alleging that an airbag deployed untimely. Plaintiffs once again misrepresent the findings of the Report.[9]

### B.     Plaintiffs Seek Additional Discovery on a Matter that is Completely Irrelevant to the Issue on Summary Judgment

Finally, as with their prior motion for continuance, Plaintiffs ask the Court to issue a new scheduling order to allow for additional discovery regarding the Honda Audit. *Compare*

---

airbag in the underlying incident deployed between 60 and 69 milliseconds. *Id*. at 125-26.

[9] Again, Plaintiffs never took any issue with AHM's discovery responses. Plaintiffs did not file a motion to compel challenging AHM's objections or complain that AHM limited its answer to other lawsuit complaints involving 2001 Honda Civics with allegations that the drivers' side airbag did not timely deploy. If Plaintiffs had any issue with the nature or scope of AHM's discovery responses, then Plaintiffs waived those issues.

Plaintiffs' Motion at 8 *with* Plaintiffs' Motion for Continuance (Doc. 141) at 3.  According to Plaintiffs, the Report provides evidence of incidents involving airbags that did not timely deploy. "The failure to timely deploy, is the heart of Plaintiffs [sic] case and proving Honda's knowledge is essential."  But Plaintiffs miss the point of AHM's summary judgment motion.

This is a design defect case.  As the Court noted in its summary judgment order (and Plaintiffs do not contest here), Plaintiffs abandoned their claims for manufacturing defect, marketing defect and misrepresentation. *See* Order (Doc. 150) at 5.  This leaves only the design defect claim.  AHM did not allege that Plaintiffs lacked evidence of a design defect.  AHM's Motion for Summary Judgment (Doc. 116) at 8-16.  Instead, AHM moved for summary judgment on this claim alleging there was <u>no evidence of a safer alternative design</u>. *Id.*  Proof of a design defect in a product's design and proof of a safer alternative design are separate elements of a design defect claim. *See Casey*, 770 F.3d at 330 (citing elements of design defect claim under Texas law); *Goodner v. Hyundai Motor Co.,* 650 F.3d 1034, 1040 (5th Cir. 2011) (same). While Plaintiffs seek further discovery regarding under-reported incidents, they do not –and cannot– explain how such evidence could be used to establish a safer alternative design. Plaintiffs' Motion (Doc. 154) at 6-8.  Such evidence could never establish the existence of a safer alternative design.  It was up to Mahon to provide admissible evidence of a safer alternative design, and he failed to do so.  Allowing additional discovery on under-reported incidents would not provide any evidence of a safer alternative design that would preclude summary judgment on Plaintiffs' design defect claim.

## VII.
## <u>CONCLUSION AND PRAYER</u>

Plaintiffs fail to "clearly establish either a manifest error of law or fact" or present newly discovered evidence." *Diamond-Brooks*, 2014 WL 1761612, at *1.  Accordingly, Defendant

American Honda Motor Co., Inc. respectfully requests the Court deny Plaintiffs' Motion for New Trial.

Respectfully submitted,

/s/ Jeffrey S. Hawkins
Jeffrey S. Hawkins
State Bar No. 09249100
E-mail: jhawkins@phmy.com

David M. Prichard
State Bar No. 16317900
S.D. Tex. I.D. No. 0616
E-mail: dprichard@phmy.com

David R. Montpas
State Bar No. 00794324
S.D. Tex. I.D. No. 25667
E-mail: dmontpas@phmy.com


PRICHARD, HAWKINS, McFARLAND
 & YOUNG, L.L.P.
Union Square, Suite 600
10101 Reunion Place Boulevard
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile


Derek S. Whitefield
Texas Bar No. 24048259
DYKEMA GOSSETT, LLP
333 South Grand Ave., Ste 2100
Los Angeles, CA 90071
(213) 457-1777 – Telephone
(213) 457-1850 – Facsimile

**ATTORNEYS FOR DEFENDANT, AMERICAN HONDA MOTOR CO., INC.**

143040

## CERTIFICATE OF SERVICE

I certify that on the 24th day of February 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case file system of the court.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

 /s/ Jeffrey S. Hawkins
Jeffrey S. Hawkins